IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

David N. Firewalker-Fields,　　　　　　　)
　　　Plaintiff,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　)　　　　1:19cv626 (CMH/JFA)
　　　　　　　　　　　　　　　　　　　　　)
Sgt. Whyche, et al.,　　　　　　　　　　)
　　　Defendants.　　　　　　　　　　　　　)

MEMORANDUM OPINION

Proceeding pro se, Virginia state prisoner David Nighthorse Firewalker-Fields initiated

this civil action under 42 U.S.C. § 1983, alleging that officials at Sussex I State Prison ("SISP")

violated several of his constitutional rights. See Dkt. Nos. 16 ("Am. Compl."), 36-1 ("Supp.

Compl."). Several of the defendants—who are officials at SISP or within the Virginia

Department of Corrections ("VDOC")—have filed a motion for summary judgment, arguing that

plaintiff's claims are unexhausted and meritless in the first instance.[1] See Dkt. Nos. 53-54.

Plaintiff opposes defendants' motion on procedural and merit-based grounds. See Dkt. Nos. 30,

57. As explained below, however, plaintiff has failed to properly exhaust each and every claim

raised in this action. Nevertheless, because the record does not foreclose the possibility that

administrative remedies were not available to plaintiff with respect to two claims, summary

judgment shall not enter as to those claims, and the relevant defendants will be directed to file a

---

[1] The defendants party to this motion are L. Wyche, V. Hill, J. Adams, E. Boone, D. Tuell, R.
Bratcher, and M. Summers. See Dkt. No. 54. Defendants K. Cosby, Barry Morano, Patrick
Jones, E. Witt, Ms. Mosley, and Israel Hamilton—first named in plaintiff's supplemental
complaint, see Dkt. No. 36—have not yet been served with process in this action and thus do not
join the motion. For the reasons explained in this Memorandum Opinion, plaintiff has failed to
exhaust the vast majority of his claims, rendering service on these individuals unnecessary.

dispositive motion as to the merits of those claims or the sufficiency of the complaint's allegations supporting them.

## I. Background

Defendants present their recitation of facts—which is largely structured around plaintiff's efforts or lack of efforts to exhaust his claims—not chronologically but in line with plaintiff's asserted grounds for relief. This Memorandum Opinion's analysis mirrors that organization. A list of plaintiff's claims, provided below, thus provides a useful roadmap.

1. Sgt. Whyche, Officer Toole, Officer Bratcher, and Counselor Boone violated plaintiff's rights under the First and Fourteenth Amendments when they forced him to choose between being assigned a "purple hearing impaired ID card" or adhering to his religious "common fare diet."

2. Defendants Adams and Hill violated plaintiff's rights under the Eighth Amendment by failing to "use the message boards in the pod to broadcast all announcements." This, plaintiff argues, put plaintiff at "risk of being shot, having chemical agents used on [him], or even having a dog used against [him] because he didn't hear the verbal commands."

3. Defendant Hill violated plaintiff's rights under the First, Eighth, and Fourteenth Amendments by "threat[ening] to move [plaintiff] out of the Hearing Impaired Pod" "whenever [plaintiff] tr[ies] to utilize the grievance procedure."

4. Defendants Hill and Summer violated plaintiff's rights under the First and Eighth Amendments by retaliating against him for verbally complaining about the "TTY phone being broke [sic] and not being able to use the only volume controlled phone in the pod." Specifically, plaintiff asserts that these defendants encouraged other inmates to harass plaintiff and delayed plaintiff's assignment to a bottom bunk.

5. In violation of plaintiff's First Amendment rights, SISP does not offer plaintiff "Friday Islamic Services" and has allegedly "split up" "the Sunni Muslim program."

6. Defendant Mosley violated plaintiff's rights under the First Amendment when she responded in the negative to plaintiff's complaint that his law library access had been delayed. Plaintiff argues this has interfered with his "access to courts."

7. Defendant Witt violated plaintiff's rights under the First Amendment by "either find[ing] some frivilous [sic] reason to reject [plaintiff's] grievance[s] or simply doesn't respond."

See Am. Compl.; Supp. Compl.

The facts that follow are drawn from (1) plaintiff's original complaint [Dkt. No. 1 ("Compl.")], which, although no longer the operative pleading in this action, is verified and thus constitutes an affidavit in support of plaintiff's position; (2) plaintiff's amended and supplemental complaints [Dkt. Nos. 16, 36]; and the affidavits of (3) E. Witt [Dkt. No.25-1 ("Witt Aff."), Dkt. No. 54-1 ("Witt Supp. Aff.")], (4) Israel Hamilton [Dkt. No. 25-1 ("Hamilton Aff.")], and (5) J. Adams [Dkt. No. 54-2 ("Adams Aff.")].

*1.*     *Claim One*

On October 7, 2018, plaintiff filed an informal complaint which stated, "I am a documented hearing Impaired inmate.  I was charged $2.00 for a Purple Hearing Impaired ID card but have yet to receive one.  Also there is nothing on my door to alert the staff."  Compl. On March 28, 2019, plaintiff filed another informal complaint, in which he again claimed that he had not been provided "a hearing impaired sign on [his] door and hearing impaired purple ID card."  See Witt Supp. Aff., Enc. A.  On May 1, 2019, plaintiff submitted a regular grievance in which he claimed that defendant Wyche stated plaintiff would be required to choose between receipt of his common fare diet or a purple identification card.  See Witt Aff.  This grievance was denied on the basis that its subject matter did not match that of the informal complaint that preceded it.  Id.  Plaintiff could have but did not appeal that decision.  Id.

Two days later, on May 3, 2019, plaintiff submitted another informal complaint in which he stated that he was "told that in order to receive [his] purple hearing impaired I.D. card [he would] have to give up [his] common fare religious diet."  See Witt Supp. Aff., Enc. A.  The record contains no evidence suggesting that plaintiff followed this informal complaint with a regular grievance.

2.    *Claim Two*

On May 14, 2019, plaintiff filed an informal complaint stating that he had been prescribed a hearing aid but denied provision of that item by officials at SISP.  The complaint further stated that SISP had not provided him with a "TTY equipped phone or a visual message board."  Witt Supp. Aff., Enc. A.  On November 8, 2019, plaintiff filed another informal complaint in which he vaguely claimed to have been "denied access to programs, services and accommodation in accordance with Federal [and] State ADA laws."  Id.  Finally, on March 1, 2020, plaintiff filed yet another informal complaint, one which claimed SISP officials "continue to make announcements from the booth and the pod knowing [plaintiff is] hearing impaired." Id., Enc. D.  Plaintiff filed a regular grievance with respect to this issue on March 27, 2020.  Id., Enc. E.  The grievance was denied for containing insufficient information, such as the dates and times on which the events complained of allegedly occurred.  Id.  The Regional Ombudsman upheld the denial of this grievance on April 13, 2020.  Id.

3.    *Claim Three*

In Claim Three, plaintiff argues defendant Hill retaliated against him for using the grievance process.  Although plaintiff has filed a number of other complaints or grievances alleging retaliation, see, e.g., Dkt. No. 54-1, p. 5, those complaints do not relate to Hill.

4.    *Claim Four*

In Claim Four, plaintiff asserts that defendants Hill and Summer violated his rights under the First and Eighth Amendments by retaliating against him for verbally complaining about the "TTY phone being broke [sic] and not being able to use the only volume controlled phone in the pod."  A review of the record demonstrates that plaintiff did not file any informal complaints or grievances with respect to this claim.

4

5.    *Claim Five*

In Claim Five, plaintiff asserts that unnamed defendants have failed to offer plaintiff "Friday Islamic Services" and have "split up" "the Sunni Muslim program."  Plaintiff filed an informal complaint with respect to this issue on October 7, 2019, writing "I haven't had Jumah (Friday Prayer Service) in over 90 days."  Witt Supp. Aff., Enc. B.  Plaintiff then filed a regular grievance on October 31, 2019, which was denied on November 6, 2019.  See Supp. Compl. Plaintiff then appealed that decision, and the decision was upheld on November 15, 2019.  Id.

6.    *Claim Six*

Plaintiff has filed several informal complaints with respect to his ability to access his institution's law library.  He first filed such an informal complaint on October 24, 2019, stating that he had requested access to the law library but "was never scheduled."  See Witt Supp. Aff., Enc. A.  On January 29, 2020, he filed another informal complaint, requesting "daily access to [the] law library to assist offenders in preparing their legal documents."  Id.  Finally, on March 11, 2020, plaintiff filed a third informal complaint with respect to his law library access, stating that he had not been able "to use the phone or ... law library since 2/16/2020."  Id.  Plaintiff filed a regular grievance with respect to this issue on November 5, 2019 and appealed its denial to the Regional Ombudsman, who upheld the denial on November 18, 2019.  Supp. Compl.

7.    *Claim Seven*

In Claim Seven, plaintiff claims that defendant Witt either fails to respond or improperly denies the grievances he files.  In November 2019, plaintiff sent a letter directly to the Regional Ombudsman stating as much.  See Supp. Compl.  That letter was received on November 13, 2019, construed as a grievance, and was denied based on plaintiff's bypassing of standard grievance protocols.  Id.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc., 637 F.3d 435, 448-49 (4th Cir. 2011). Where, however, "the additional evidence sought ... would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment," a Court need not allow discovery prior to ruling on a motion for summary judgment. See Strag v. Bd. of Trs. Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995).

### III. Analysis

As stated above, plaintiff's claims read as follows:

1. Sgt. Whyche, Officer Toole, Officer Bratcher, and Counselor Boone violated plaintiff's rights under the First and Fourteenth Amendments when they forced him to choose between being assigned a "purple hearing impaired ID card" or adhering to his religious "common fare diet."

6

2. Defendants Adams and Hill violated plaintiff's rights under the Eighth Amendment by failing to "use the message boards in the pod to broadcast all announcements." This, plaintiff argues, put plaintiff at "risk of being shot, having chemical agents used on [him], or even having a dog used against [him] because he didn't hear the verbal commands."

3. Defendant Hill violated plaintiff's rights under the First, Eighth, and Fourteenth Amendments by "threat[ening] to move [plaintiff] out of the Hearing Impaired Pod" "whenever [plaintiff] tr[ies] to utilize the grievance procedure."

4. Defendants Hill and Summer violated plaintiff's rights under the First and Eighth Amendments by retaliating against him for verbally complaining about the "TTY phone being broke [sic] and not being able to use the only volume controlled phone in the pod." Specifically, plaintiff asserts that these defendants encouraged other inmates to harass plaintiff and delayed plaintiff's assignment to a bottom bunk.

5. In violation of plaintiff's First Amendment rights, SISP does not offer plaintiff "Friday Islamic Services" and has allegedly "split up" "the Sunni Muslim program."

6. Defendant Mosley violated plaintiff's rights under the First Amendment when she responded in the negative to plaintiff's complaint that his law library access had been delayed. Plaintiff argues this has interfered with his "access to courts."

7. Defendant Witt violated plaintiff's rights under the First Amendment by "either find[ing] some frivolous [sic] reason to reject [plaintiff's] grievance[s] or simply doesn't respond."

See Dkt. Nos. 16, 36-1.

Plaintiff opposes defendants' proposed bases for summary judgment both on procedural grounds and with respect to their merits. Procedurally, plaintiff avers that the motion for summary judgment should be denied outright for defendants' failure to abide by this Court's July 20, 2020 Order, through which their first motion for summary judgment was denied without prejudice to later renewal. See Dkt. No. 57. Plaintiff argues that, in that Order, this Court ordered defendants to file any renewed dispositive motion "on different grounds." See Dkt. No. 57, p. 4.

It is clear that plaintiff misunderstood the Court's July 20 Order. Defendants' first motion was based on a failure to exhaust theory. See Dkt. No. 25. In the Order denying that

7

motion, the Court explicitly stated, "[t]o the extent that defendants are still of the belief that plaintiff has failed to exhaust his asserted claims, they are free to renew that argument in a second motion for summary judgment." See Dkt. No. 49, pp. 2-3. And, contrary to plaintiff's arguments, in the July Order, the Court made no ruling as to the validity of any of the affirmative defenses stated in defendants' answer. Accordingly, plaintiff's procedural argument in opposition to defendants' motion is factually frivolous and must be rejected. A consideration of the merits of defendants' arguments is thus appropriate.

Defendants' primary assertion, once more, is that plaintiff failed to exhaust the claims raised in his complaints and that he is therefore not entitled to relief. See Dkt. No. 54. Plaintiff counters, arguing that, although he may not have completed each stage of the VDOC's grievance process with respect to each of his claims, he exhausted all "available" remedies, thereby satisfying the Prison Litigation Reform Act's ("PLRA") requirements. See Dkt. No. 57.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As relevant to this case, "serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy 'unavailable,' and thus lift the exhaustion requirement." Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008). For threats or intimidation to render administrative remedies unavailable, they must be substantial or serious enough that they would deter a similarly situated prisoner of ordinary

8

firmness from pursuing those remedies. <u>See, e.g.</u>, <u>Turner</u>, 541 F.3d at 1085; <u>Kaba v. Stepp</u>, 458 F.3d 678, 686 (7th Cir. 2006).

Where such remedies *are* available, though, the PLRA requires of a prisoner "proper" exhaustion, which demands the prisoner's "compliance with an agency's deadlines and other critical procedural rules." <u>Woodford</u>, 548 U.S. at 90-91, 93. <u>Moore</u>, 517 F.3d at 729. Additionally, "the language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal [of unexhausted claims] rather than issuing continuances so that exhaustion may occur." <u>Carpenter v. Hercules</u>, Case No. 3:10cv241–HEH, 2012 WL 1895996, at *4 (E.D. Va. May 23, 2012) (quoting <u>Johnson v. Jones</u>, 340 F.3d 624, 628 (8th Cir. 2003)).[2]

    *i.*    *Claim One*

In Claim One, plaintiff asserts that Sgt. Whyche, Officer Toole, Officer Bratcher, and Counselor Boone violated his rights under the First and Fourteenth Amendments when they

---

[2] <u>See also</u> <u>Anderson v. XYZ Correctional Health Servs., Inc.</u>, 407 F.3d 674, 677 (4th Cir. 2005); <u>Cabbagestalk v. Ozmint</u>, No. 9:06-3005-MBS, 2007 WL 2822927 (D.S.C.2007); <u>Neal v. Goord</u>, 267 F.3d 116, 123 (2d Cir. 2001) (holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress's directive to pursue administrative remedies prior to filing a complaint in federal court."), <u>overruled on other grounds by</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Jackson v. Dist. of Columbia</u>, 254 F.3d 262, 268–69 (D.C. Cir. 2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999) (holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); <u>Perez v. Wis. Dep't of Corr.</u>, 182 F.3d 532, 535 (7th Cir. 1999) (holding "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

forced him to choose between being assigned a "purple hearing impaired ID card" or adhering to his religious "common fare diet."[3] See Dkt. No. 16.

Plaintiff submitted two informal complaints and one regular grievance with respect to this issue. First, on March 28, 2019, plaintiff filed an informal complaint in which he claimed that he had not been provided "a hearing impaired sign on [his] door and hearing impaired purple ID card." See Dkt. No. 54-1, p. 23. On May 1, 2019, plaintiff submitted a regular grievance in which he claimed that defendant Wyche stated plaintiff would be required to choose between receipt of his common fare diet or a purple identification card. See Dkt. No. 25-1, p. 22. This grievance was denied on the basis that its subject matter did not match that of the informal complaint that preceded it. Dkt. No. 25-1, p. 23. Plaintiff could have but did not appeal that decision. Id.

Next, on May 3, 2019, plaintiff submitted another informal complaint in which he stated that he was "told that in order to receive [his] purple hearing impaired I.D. card [he would] have to give up [his] common fare religious diet." See Dkt. No. 54-1, p. 22. The record contains no evidence suggesting that plaintiff followed this informal complaint with a regular grievance.

---

[3] In his original complaint, which is no longer operative but was verified and is thus construed as an affidavit for the purposes of adjudicating the motion for summary judgment, plaintiff claimed to have submitted an informal complaint on October 7, 2018 that was never logged by SISP officials. See Dkt. No. 1. The document, which plaintiff attached, reads, "I am a documented hearing Impaired inmate. I was charged $2.00 for a Purple Hearing Impaired ID card but have yet to receive one. Also there is nothing on my door to alert the staff." Id. Even if this complaint had been logged and plaintiff completed the grievance process following its entry, it would not serve to exhaust Claim One as presented in plaintiff's operative complaint. This is so because the informal complaint appended to Docket Entry #1 does not state that staff forced plaintiff to choose between his ID card and his receipt of the common fare diet. Because this forced choice, not the mere deprivation of the ID card, is the basis of plaintiff's First and Fourteenth Amendment claims, SISP staff's failure to log the informal complaint does not rescue this claim from its exhaustion-related failure.

Based on this evidence, it is clear that plaintiff has failed to exhaust administrative remedies with respect to Claim One.  To the extent plaintiff argues that he has salvaged his claim by sending informal complaints directly to the VDOC Ombudsman, see, e.g., Dkt. No. 30-1, p. 11, this argument is unavailing.  As stated above, "section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal [of unexhausted claims] rather than issuing continuances so that exhaustion may occur."  Carpenter, 2012 WL 1895996, at *4.

     *ii.*    *Claim Two*

In Claim Two, plaintiff asserts that defendants Adams and Hill violated his rights under the Eighth Amendment by failing to "use the message boards in the pod to broadcast all announcements."  This, plaintiff argues, put plaintiff at "risk of being shot, having chemical agents used on [him], or even having a dog used against [him] because he didn't hear the verbal commands."

With respect to this claim, the record shows that plaintiff has filed three informal complaints: one on May 14, 2019, see Dkt. No. 25-1, p. 26; a second on November 8, 2019, see Dkt. No. 54-1, p. 28; and a third on March 1, 2020, see Dkt. No. 54-1, p. 29.  Plaintiff filed a regular grievance relevant to this issue on March 27, 2020, which was denied for containing insufficient information such as dates and times.  See Dkt. No. 54-1, pp. 30-31.  The Regional Ombudsman upheld the denial of the regular grievance on April 13, 2020.  Id.

Based on the above, although it appears that plaintiff availed himself of every step of the administrative grievance process with respect to this claim, he has only done so *after* the filing of the operative complaint.  Because a plaintiff must exhaust his claims prior to bringing suit, this claim is barred.

11

iii.    *Claim Three*

In Claim Three, plaintiff asserts that defendant Hill violated plaintiff's rights under the

First, Eighth, and Fourteenth Amendments by "threat[ening] to move [plaintiff] out of the

Hearing Impaired Pod" "whenever [plaintiff] tr[ies] to utilize the grievance procedure."

The record contains no evidence whatsoever of plaintiff's having filed a complaint with

respect to this issue.  Although plaintiff appears to have filed some complaints which allege First

Amendment retaliation issues, see, e.g., Dkt. No. 54-1, p. 5, those complaints do not relate to

defendant Hill or the grievance process.  It is therefore clear that this claim has not been properly

exhausted.

iv.    *Claim Four*

In Claim Four, plaintiff asserts that defendants Hill and Summer violated his rights under

the First and Eighth Amendments by retaliating against him for verbally complaining about the

"TTY phone being broke [sic] and not being able to use the only volume controlled phone in the

pod."  Specifically, plaintiff asserts that these defendants encouraged other inmates to harass

plaintiff and delayed plaintiff's assignment to a bottom bunk.

There is no evidence that plaintiff attempted to complete the administrative review

process with respect to this claim.

v.    *Claim Five*

In Claim Five, plaintiff asserts that unnamed defendants have failed to offer plaintiff

"Friday Islamic Services" and have "split up" "the Sunni Muslim program."  The record

demonstrates that plaintiff filed an informal complaint with respect to this issue on October 7,

2019.  See Dkt. No. 54-1, p. 27.  Plaintiff then filed a regular grievance on October 31, 2019,

which was denied on November 6, 2019.  See Dkt. No. 36-2, pp. 6-7.  Plaintiff then appealed

that decision, and the decision was upheld on November 15, 2019. Id. Accordingly, plaintiff appears to have exhausted this issue but to have done so after the initiation of this suit, which occurred in May 2018. The case was then transferred to this Court in May 2019. Plaintiff is thus not entitled to relief as to this claim.

      *vi.*    *Claim Six*

In Claim Six, plaintiff asserts that defendant Mosley violated his rights under the First Amendment when she denied him relief after he complained that his law library access had been delayed. Plaintiff argues this has interfered with his "access to courts."

Plaintiff has filed several informal complaints with respect to his ability to access his institution's law library. See Dkt. No. 54-1, pp. 15, 17, 21. He appears to have additionally filed a regular grievance and appealed that grievance's denial to the regional ombudsman. See Dkt. No. 36-2, pp. 3-4. The regional ombudsman, however, did not render a final decision as to this issue until November 18, 2019, well after the initiation of the instant suit. Id. Accordingly, plaintiff is not entitled to relief as to this claim.

      *vii.*    *Claim Seven*

Claim Seven is exceptionally brief and is not supported by any specific factual allegations. It is not necessarily clear whether plaintiff sought to raise it as a standalone claim or merely sought to explain his failure to exhaust administrative remedies. It reads as follows:

> Enclosed is the attempt to properly exhaust administrative remedies at Sussex I State Prison. On every grievance defendant Witt either finds some frivilous [sic] reason to reject the grievance or simply doesn't respond.

Supp. Compl. pp. 4-5. Attached are several grievances that defendant Witt denied as well as a letter plaintiff sent to the VDOC Ombudsman, which bypassed the initial institutional grievance requirements. Id.

viii.    _Summary of Exhaustion_

Based on the above, the record supports a finding that plaintiff has not exhausted several of the claims presented in his amended and supplemental complaints and that the claims he _has_ exhausted were not exhausted until after the initiation of this suit.  None of the seven claims plaintiff has raised, then, have been _properly_ exhausted.

Construing the record in the light most favorable to the nonmovant, however, the Court cannot conclude that administrative remedies were available to plaintiff with respect to Claims Three and Four, which allege First Amendment retaliation.  Indeed, plaintiff's claims that defendants Hill and Summer threatened to remove him from his special housing unit and spurred other inmates to "make [plaintiff] suffer," see Am. Compl. p. 5, describe circumstances that could well deter an inmate of ordinary firmness from filing grievances against those defendants, particularly an inmate similarly situated to plaintiff, one with hearing impairments potentially at higher risk of harm outside of specialized facilities that cater to his needs.  That plaintiff was not overtly threatened with violence is not necessarily determinative as to the question of the availability of administrative procedures.  Cf. Turner, 541 F.3d at 1084-85 (finding threat to transfer inmate far from his family if he filed lawsuit or grievance rendered grievance procedure unavailable).

Additionally, the fact that plaintiff filed grievances with respect to other issues and other SISP officials does not discount a finding that remedies were unavailable to him with respect to Claims Three and Four.  Indeed, whether an inmate of ordinary firmness would be dissuaded from filing grievances is an objective test, rendering plaintiff's subjective perceptions irrelevant to its determination.  See, e.g., Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004).

14

On this basis, an examination of the merits of plaintiff's retaliation claims appears to be in order. And because it would be improper to grant summary judgment before plaintiff has had an opportunity to conduct discovery as to these claims, see E.I. du Pont, 637 F.3d at 448-49 defendants' motion will be denied without prejudice to later renewal as to these claims.[4] Plaintiff may renew discovery requests to the extent they are relevant to the questions of defendants Hill and Summers' alleged retaliation. With respect to all other claims, the Court finds that plaintiff failed to exhaust his administrative remedies and that he is therefore barred from relief as to those claims.[5]

## IV. Conclusion

For the reasons stated above, defendants' motion for summary judgment will be granted in part and denied in part. Plaintiff will be permitted to renew discovery requests to the extent they are relevant to the two claims—Claims Three and Four as described above—that remain live in this action. After plaintiff has had an opportunity to conduct discovery—a process defendants remain welcome to file any appropriate objections to—defendants will be permitted

---

[4] Because plaintiff has made no argument that his failure to exhaust his other claims could be combatted through discovery, dismissal of these claims prior to discovery processes is appropriate.

[5] It is also clear that, to the extent he sought to raise Claim Seven as an independent ground for relief and not as an explanation of his failure to exhaust, he has failed to state a viable claim. Indeed, in Claim Seven, plaintiff states only that defendant Witt denies or fails to respond to his grievances. Inmates, though, do not have a constitutionally protected right to participate in prison grievance procedures in the first instance. See, e.g., Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). See also Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately to inmate's grievances do not establish the involvement of those officials and administrators in any alleged underlying deprivation). The Prison Litigation Reform Act requires a district court to dismiss an action in which a plaintiff proceeds in forma pauperis if it "determines that the action … fails to state a claim upon which relief may be granted." See 28 U.S.C. § 1915(e)(2)(B). Accordingly, finding Claim Seven without merit, the Court holds that this claim must be dismissed.

to renew their motion for summary judgment or file a motion to dismiss as it relates to the merits of or factual allegations supporting plaintiff's claims. An appropriate Order will issue alongside this Memorandum Opinion.

Entered this _17th_ day of ___Mar,___ 2021.

Alexandria, Virginia

United States District Judge